ACCEPTED
03-14-00570-CR
3977757
THIRD COURT OF APPEALS
AUSTIN, TEXAS
2/2/2015 9:23:43 AM
JEFFREY D. KYLE
CLERK

No. 03-14-00570-CR

# IN THE COURT OF APPEALS
# THIRD DISTRICT
# AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

2/2/2015 9:23:43 AM

JEFFREY D. KYLE
Clerk

_____

## ERIC BYRON CRAYTON, Appellant

*v.*

## THE STATE OF TEXAS

_____

## ON APPEAL FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
## TRIAL COURT CAUSE NUMBER CR2012-225

_____

## BRIEF FOR APPELLANT

_____

**Richard E. Wetzel**
**State Bar No. 21236300**

**1411 West Ave., Suite 100**
**Austin, Texas 78701**

**(512) 469-7943**
**(512) 474-5594**
**wetzel_law@1411west.com**

**Attorney for Appellant**
**Eric Byron Crayton**

## Identity of Parties and Counsel

| | |
|---|---|
| Appellant: | Eric Byron Crayton |
| Trial Counsel for Appellant: | Josh and Amanda Erwin<br>Attorneys at Law<br>109 E. Hopkins<br>San Marcos, TX<br>78666 |
| Appellate Counsel for Appellant: | Richard E. Wetzel<br>Attorney at Law<br>1411 West Ave. Ste., 100<br>Austin, TX 78701 |
| Trial and Appellate Counsel for Appellee: | Jennifer Tharp<br>Criminal District Attorney<br>150 N. Seguin St., Ste. 307<br>New Braunfels, TX 78130 |
| Trial Judge: | Hon. Jack Robison<br>Presiding Judge<br>207th District Court |

ii

# Table of Contents

**Page**

List of Parties . . . . . . . . . . . . . . . . . . .ii

Table of Contents . . . . . . . . . . . . . . . . . iii

Index of Authorities . . . . . . . . . . . . . . . . . . v

Statement of the Case . . . . . . . . . . . . . . . . . 1

Issues Presented . . . . . . . . . . . . . . . . . . 2

Statement of Facts . . . . . . . . . . . . . . . . . . 3

Summary of the Argument . . . . . . . . . . . . . . . . . 9

Point of Error One . . . . . . . . . . . . . . . . . 12

The trial court abused its discretion by admitting Crayton's recorded statement which does not comply with TEX. CRIM. PROC. CODE art. 38.22 § 3(a)(2) (Supp. CR 5, 4 RR 146).

Point of Error Two . . . . . . . . . . . . . . . . . 13

The trial court abused its discretion by admitting Crayton's recorded statement which was obtained after an officer repeatedly ignored Crayton's attempt to terminate the interview and invoke his right to remain silent (Supp. CR 5, 4 RR 146).

Point of Error Three . . . . . . . . . . . . . . . . . 28

The evidence is insufficient to prove Crayton tampered with evidence with knowledge an investigation was pending, in progress, or that an offense had been committed.

Point of Error Four . . . . . . . . . . . . . . . . . 32

The state failed to produce independent evidence to corroborate Crayton's extrajudicial statement that he tampered with physical evidence.

Prayer . . . . . . . . . . . . . . . . . 34

Certificate of Compliance . . . . . . . . . . . . . . . . . 35

Certificate of Service . . . . . . . . . . . . . . . . . 35

# Index of Authorities

**First Page Cited**

**Cases**

*Almaguer v. State*, ___ S.W.3d ___, 2014 WL 5088386
(Tex. App.—Corpus Christi 2014, pet. filed) . . . . . . . . . . . . . 18

*Amador v. State,* 221 S.W.3d 666
(Tex. Crim. App. 2007) . . . . . . . . . . . . . 18

*Barshaw v. State,* 342 S.W.3d 91
(Tex. Crim. App. 2011) . . . . . . . . . . . . . 24

*Best v. State,* 118 S.W.3d 857
(Tex. App.-Fort Worth 2003, no pet.) . . . . . . . . . . . . . 18

*Bible v. State*, 162 S.W.3d 234
(Tex. Crim. App. 2005) . . . . . . . . . . . . . 21

*Brooks v. State,* 323 S.W.3d 893
(Tex. Crim. App. 2010) . . . . . . . . . . . . . 29

*Clayton v. State,* 235 S.W.3d 772
(Tex.Crim.App.2007) . . . . . . . . . . . . . 29

*Coble v. State,* 330 S.W.3d 253
(Tex. Crim. App. 2010) . . . . . . . . . . . . . 24

*Coggeshall v. State,* 961 S.W.2d 639
(Tex. App.-Fort Worth 1998, pet. ref'd) . . . . . . . . . . . . . 23

*Cooper v. State*, 961 S.W.2d 222
(Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) . . . . . . . . . . . . . 25

*Davidson v. State,* 42 S.W.3d 165
(Tex. App.-Fort Worth 2001, pet. ref'd) . . . . . . . . . . . . . 23

*Estrada v. State,* 154 S.W.3d 604
(Tex. Crim. App. 2005) . . . . . . . . . . . . . 19

*Fisher v. State*, 851 S.W.2d 298
(Tex. Crim. App. 1993) . . . . . . . . . . . . . 33

*Graves v. State*, ___ S.W.3d ___, 2014 WL 6983635
(Tex. App.—Texarkana 2014, pet. filed) . . . . . . . . . . . . . 30

*Gribble v. State,* 808 S.W.2d 65
(Tex. Crim. App. 1990) . . . . . . . . . . . . . 33

*Guzman v. State,* 955 S.W.2d 85
(Tex. Crim. App. 1997) . . . . . . . . . . . . . 18

*Hartsfield v. State,* 305 S.W.3d 859
(Tex. App.–Texarkana 2010, pet. ref'd) . . . . . . . . . . . . . 29

*Hernandez v. State*, 114 S.W.3d 58
(Tex. App.—Fort Worth 2003, pet. ref'd) . . . . . . . . . . . . . 23

*Herrera v. State*, 241 S.W.3d 520
(Tex. Crim. App. 2007) . . . . . . . . . . . . . 20

*Hooper v. State,* 214 S.W.3d 9
(Tex. Crim. App. 2007) . . . . . . . . . . . . . 29

*Jackson v. Virginia,* 443 U.S. 307
(1979) . . . . . . . . . . . . . 29

*Johnson v. State,* 68 S.W.3d 644
(Tex. Crim. App. 2002) . . . . . . . . . . . . . 19

*King v. State,* 953 S.W.2d 266
(Tex. Crim. App. 1997) . . . . . . . . . . . . . 23

*Kotteakos v. United States,* 328 U.S. 750
(1946) . . . . . . . . . . . . . 24

*Long v. State,* 203 S.W.3d 352
(Tex. Crim. App. 2006) . . . . . . . . . . . . . 27

*Lumpkin v. State*, 129 S.W.3d 659
(Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) . . . . . . . . . . . . 30

*Miles v. State,* 204 S.W.3d 822
(Tex. Crim. App. 2006) . . . . . . . . . . . . 27

*Miranda v. Arizona,* 384 U.S. 436
(1966) . . . . . . . . . . . . 25

*Montanez v. State,* 195 S.W.3d 101
(Tex. Crim. App. 2006) . . . . . . . . . . . . 19

*Mosley v. State,* 983 S.W.2d 249
(Tex. Crim. App. 1998) . . . . . . . . . . . . 23

*Pannell v. State*, 7 S.W.3d 222
(Tex. App.—Dallas 1999, pet. ref'd) . . . . . . . . . . . . 29

*Romero v. State,* 800 S.W.2d 539
(Tex. Crim. App. 1990) . . . . . . . . . . . . 18

*Simpson v. State*, 227 S.W.3d 855
(Tex. App.—Houston [14th Dist.] 2007, no pet.) . . . . . . . . . . . . 27

*State v. Cullen,* 195 S.W.3d 696
(Tex. Crim. App. 2006) . . . . . . . . . . . . 18

*State v. Kelly,* 204 S.W.3d 808
(Tex. Crim. App. 2006) . . . . . . . . . . . . 19

*State v. Ross,* 32 S.W.3d 853
(Tex. Crim. App. 2000) . . . . . . . . . . . . 18

*Thomas v. State*, 408 S.W.3d 877
(Tex. Crim. App. 2013) . . . . . . . . . . . . 18

*Watson v. State,* 762 S.W.2d 591
(Tex. Crim. App. 1988) . . . . . . . . . . . . 25

*Wiede v. State,* 214 S.W.3d 17
(Tex. Crim. App. 2007) . . . . . . . . . . . . . 18

*Wilson v. State*, 442 S.W.3d 779
(Tex. App.—Fort Worth 2014, pet. filed) . . . . . . . . . . . . . 19

**Statutes**

TEX. CRIM. PROC. CODE art. 38.22 § 3(a)(2) . . . . . . . . . . . . . .9

TEX. CRIM. PROC. CODE art. 38.22 § 3(e) . . . . . . . . . . . . . 23

TEX. PEN. CODE § 1.07(a)(22)(A) . . . . . . . . . . . . . 31

TEX. PEN. CODE § 6.03(b) . . . . . . . . . . . . . 31

TEX. PEN. CODE § 9.02 . . . . . . . . . . . . . 11

TEX. PEN. CODE § 9.31 . . . . . . . . . . . . . 11

TEX. PEN. CODE § 9.32 . . . . . . . . . . . . . 11

TEX. PEN. CODE § 37.09(a)(1) . . . . . . . . . . . . . 28

TEX. PEN. CODE § 37.09(d)(1) . . . . . . . . . . . . . 28

**Rules**

TEX. R. APP. P. 9.4 . . . . . . . . . . . . . 35

TEX. R. APP. P. 44.2(a) . . . . . . . . . . . . . 10

TEX. R. APP. P. 44.2(b) . . . . . . . . . . . . . .9

viii

## Statement of the Case

This is an appeal from a criminal proceeding. Eric Byron Crayton was indicted by a Comal County grand jury for the offenses of murder and tampering with physical evidence (CR 8). The indictment additionally alleged two prior convictions for purposes of enhancement of punishment (CR 8). A jury was selected and sworn (2 RR 326, 328). Crayton entered pleas of not guilty to the indicted offenses (3 RR 12). The jury found him not guilty of murder and guilty of tampering with physical evidence (CR 117, 118, 6 RR 75).

Crayton elected for the jury to assess punishment (CR 96). He entered pleas of true to the enhancement paragraphs (7 RR 13). The jury found the prior convictions true and assessed punishment at 35 years (CR 144, 7 RR 7 RR 61). Crayton was sentenced in open court (7 RR 62).

The trial court certified Crayton's right to appeal (CR 147). Notice of appeal was timely filed (CR 301).

## Issues Presented on Appeal

**Point of Error One**

The trial court abused its discretion by admitting Crayton's recorded statement which does not comply with TEX. CRIM. PROC. CODE art. 38.22 § 3(a)(2) (Supp. CR 5, 4 RR 146).

**Point of Error Two**

The trial court abused its discretion by admitting Crayton's recorded statement which was obtained after an officer repeatedly ignored Crayton's attempt to terminate the interview and invoke his right to remain silent (Supp. CR 5, 4 RR 146).

**Point of Error Three**

The evidence is insufficient to prove Crayton tampered with evidence with knowledge an investigation was pending, in progress, or that an offense had been committed.

**Point of Error Four**

The state failed to produce independent evidence to corroborate Crayton's extrajudicial statement that he tampered with physical evidence.

## Statement of Facts

The two paragraph murder count alleges Crayton stabbed Thomas Kitto to death on January 19, 2012 (CR 8). The two paragraph tampering with evidence count alleges Crayton tampered with a knife on January 19, 2012, while knowing an investigation was pending, in progress, or an offense had been committed (CR 8).

In January of 2012, Andrea Young lived at the Canyon Falls RV Park in Comal County (3 RR 24). She lived in a cabin with her friend (3 RR 37). Young was in a romantic relationship with Kitto who lived in an adjacent cabin (3 RR 25).

Crayton and Young were close friends (3 RR 29). On the afternoon of January 19, 2012, she received a text from Crayton indicating he wanted to speak with her (3 RR 47). After speaking with Young at a convenience store, Crayton followed her back to the RV park (3 RR 51, 54).

As Young and Crayton approached her cabin, Young saw Kitto sitting at an outdoor table (3 RR 55). Kitto stood up, ran toward Crayton, grabbed him by the shirt, and threw him to the ground (3 RR 59). While on the ground, Crayton told Kitto that he was freaking him out (3 RR 60). While attempting to stop Kitto's attack of Crayton, Young saw Kitto hit Crayton again (3 RR 61). Kitto sat back down at the table and was approached by Crayton (3 RR 63). Crayton displayed a

knife (3 RR 68). After securing her dog, Young approached Kitto and he showed her a knife wound to his chest (3 RR 73). Young screamed at Crayton and he left the scene in his vehicle (3 RR 74). Young conceded that Crayton had done nothing to provoke Kitto's attack (3 RR 108).

Young attempted to render aid to Kitto while waiting for assistance to arrive (3 RR 78). She eventually spoke with several officers responding to the scene of Kitto's stabbing (3 RR 81).

Deputy Ben Haynes, with the Comal County Sheriff's Office, responded to the scene of Kitto's stabbing (3 RR 165). He found Kitto on the ground while others were attempting to administer aid to him (3 RR 169). EMS personnel at the scene declared Kitto dead (3 RR 175).

Haynes took photographs of the scene (3 RR 180). He found a knife sheath at the scene (3 RR 187). The only evidence recovered by law enforcement was from the scene of the stabbing (3 RR 203). The following morning, a videotape of the crime scene was made by another deputy (3 RR 208). The videotape was displayed for the jury (3 RR 212, 8 RR SEX 60).

After speaking with witnesses at the scene, Haynes determined Crayton was a suspect in the stabbing of Kitto (3 RR 175). Crayton was apprehended by law

enforcement on the same day as the stabbing (3 RR 216). Crayton was the only suspect in the case (3 RR 217).

Haynes admitted that his investigation revealed that Kitto had been the aggressor in attacking Crayton at the RV Park (3 RR 224, 4 RR 11, 45, 8 RR DEX 6). Crayton had done nothing to provoke Kitto before the stabbing (3 RR 225).

Deputy Chris Garza, of the Comal County Sheriff's Office, assisted in the investigation (4 RR 54). He spoke with witnesses at the scene of the stabbing and they indicated Kitto had started the confrontation with Crayton (4 RR 58 – 66). Recordings of those interviews were played for the jury (4 RR 58, 63, 8 RR SEX 61 and 62).

Deputy Chris Koepp, of the Comal County Sheriff's Office, stopped Crayton in a truck near his home on January 19, 2012 (4 RR 88). Crayton yelled "Fuck that. I'm not going back" as the officer attempted to handcuff him (4 RR 89). Crayton fled on foot and Koepp tackled him on the pavement (4 RR 90). The dash camera recording of the incident was played for the jury (4 RR 93, 8 RR SEX 63).

Deputy Rex Campbell, of the Comal County Sheriff's Office, went to the scene of Kitto's stabbing and was unable to locate the knife used to stab him (4 RR 115). Campbell later took Crayton to the Sheriff's Office and interviewed him (4 RR 123). An audio recording of the interview was played for the jury (4 RR 125, 8

RR SEX 72). Crayton made no mention of the stabbing incident during his conversation with Campbell as recorded on State's Exhibit 72 (8 RR SEX 72). In a subsequent interview with another officer, Crayton stated he threw the knife he used to defend himself out the window (4 RR 133-134).

Deputy Tommy Ward, of the Comal County Sheriff's Office, assisted in the investigation (4 RR 139). On January 19, 2012, he interviewed Crayton at the Sheriff's Office after Campbell had spoken with Crayton (4 RR 143). His interview of Crayton was recorded and played for the jury (4 RR 146, 8 RR SEX 73). The recording published to the jury, SEX 73, is a redacted version of PT SEX 6 (4 RR 145-146).

As played for the jury, the interview contains the following statements by Crayton to Ward at the designated times: 1:34 just take me to my cell now; 1:36 no, I ain't telling you nothing; 2:53 I'm done man, I'm done; 2:54 I don't want to talk; 3:01 no I don't want to talk , I'm done; 3:24 – I threw the knife at Sorrell Creek; 3:41 I'm done; 5:08 don't talk to me, just take me to my cell now.

Ward executed a search warrant at Crayton's home and was unable to find the knife used to kill Kitto (4 RR 148). He did find some bloody clothing at Crayton's home (4 RR 150). Ward additionally executed a search warrant for the truck Crayton drove at the time of the stabbing and his apprehension (4 RR 150).

After speaking with Crayton, Ward searched Sorrell Creek on two occasions, but was unable to locate the knife used in the incident involving Kitto (4 RR 148-149).

Ward attended Kitto's autopsy (4 RR 150). Those in attendance were surprised to find Kitto's left hand clutching a bullet which had not been present at the scene of the stabbing (4 RR 154). With the aid of the Texas Rangers, Ward later determined the bullet had been placed in Kitto's hand by someone at the funeral home which picked up his body from the scene of the stabbing (5 RR 47).

Dr. Kendall Crowns, of the Travis County Medical Examiner's Office, performed an autopsy on Kitto (5 RR 115). He observed six knife wounds of varying depths (5 RR 125). One wound penetrated the heart and another penetrated a lung (5 RR 126, 130). He opined that Kitto died from sharp force injuries (5 RR 142). Kitto's blood alcohol content was .13 at the time of his death (5 RR 138). The State rested (5 RR 155).

Deputy Brian Morgan, of the Comal County Sheriff's Office, assisted in the investigation (5 RR 156). He examined Kitto's cellphone (5 RR 160). Shortly before his death, Kitto sent Young a series of text messages complaining about her relationship with Crayton (5 RR 161).

James Ortiz, of the Comal County Sheriff's Office, collected Crayton's property at the time he was booked into the jail (5 RR 170). Among the items collected was a tooth (5 RR 171).

Charles Black is a former law enforcement officer and current private investigator (5 RR 192). He examined the evidence in this case and did not believe that any of Kitto's injuries were defensive wounds (5 RR 198). Based on the evidence he reviewed, he believed Crayton acted in self-defense when he stabbed Kitto (5 RR 218). The defense rested and both sides closed (5 RR 235).

No objection was voiced to the charge which included the justifications of self-defense and deadly force in defense of a person (CR 108, 5 RR 245). The charge was read to the jury (6 RR 7). Argument was presented (6 RR 18, 26, and 51). The jury found Crayton not guilty of murder and guilty of tampering with physical evidence (6 RR 75).

Crayton elected for the jury to assess punishment (CR 96). He entered pleas of true to the enhancement paragraphs (7 RR 13). The State offered records from his prior criminal convictions (7 RR 16, 8 RR SEX 98-116). The State rested (7 RR 22).

Darrell Banks employed Crayton in his trash collection business (7 RR 24). He stated Crayton is a good employee and good person (7 RR 25).

Stacey Page has known Crayton for 30 years (7 RR 30). She testified to his character and family background (7 RR 32). The defense rested and both sides closed (7 RR 35, 38).

No objection was voiced to the charge and it was read to the jury (7 RR 39, 40). Argument was presented (7 RR 47, 49, and 53). The jury found both of the prior convictions alleged for enhancement true and assessed punishment at 35 years (7 RR 61). Crayton was sentenced in open court (7 RR 62).

## Summary of the Argument

Four points of error are presented on appeal. Two challenge the admissibility of a recorded statement taken from Crayton following his arrest. Two challenge the sufficiency of the evidence to support the conviction. Crayton seeks a new trial or a judgment of acquittal.

The first point of error argues a statutory violation in the admission of an officer's recording of Crayton's interrogation. Under de novo review, this Court should find the trial court abused its discretion by admitting the complained of recording of Crayton's interrogation by Deputy Ward because it does not contain the warnings required under TEX. CRIM. PROC. CODE art. 38.22 § 3(a)(2) in the recording. After considering the appropriate 44.2(b) factors, this Court should find the erroneous admission of Ward's recording had a substantial and injurious effect

or influence in determining the jury's verdict. Crayton should be awarded a new trial in which the fact finder will receive only admissible evidence.

The second point of error argues the same recording was inadmissible for a constitutional violation. The officer ignored Crayton's repeated attempts to terminate the interview and invoke his right to remain silent. Before the incriminating statement concerning disposal of the knife, Crayton attempted to terminate the interview on five occasions and invoke his right to remain silent. Despite his assertions "just take me to my cell now," "no, I ain't telling you nothing," "I'm done man, I'm done," "I don't want to talk," and "no I don't want to talk" the officer continued the interrogation. Crayton's assertions seeking to invoke his right to silence were unambiguous and the custodial interrogation should have ceased immediately. Under de novo review, this Court should find the trial court abused its discretion in admitting into evidence anything on the videotape after the point Crayton invoked his right to terminate questioning. After considering the appropriate 44.2(a) factors, this Court will be unable to find beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. Crayton should be awarded a new trial in which the fact finder will receive only admissible evidence.

The third point of error urges the evidence is insufficient to prove Crayton had knowledge an investigation was pending, in progress, or an offense had been committed at the time of tampering with the knife. Crayton left the scene with the knife before the authorities were notified of Kitto's stabbing. He claimed to have thrown the knife in a creek. There is no showing of when that act occurred in relation to an investigation in progress or pending. The evidence does not support the theory that Crayton knew an investigation was pending or in progress at the time he tampered with the knife.

Crayton further argues the evidence is insufficient to prove he knew an offense had been committed at the time he tampered with the knife. The undisputed evidence at trial was that Kitto was the aggressor and Crayton had done nothing to warrant Kitto's attack. The defensive theory throughout was based on the justifications of self-defense and deadly force in defense of a person. Those justifications were included in the court's charge and argued by counsel in seeking an acquittal. The jury responded by finding Crayton not guilty of the offense of murder as charged in the first count of the indictment.

It is not an offense to use self-defense or deadly force in defense of a person. Those justifications are a defense to an offense. TEX. PEN. CODE §§ 9.02, 9.31, and 9.32. Crayton maintains the facts presented at trial do not show he had

- 11 -

knowledge that an offense had been committed at the time he tampered with the knife. The jury's finding to the contrary is not a rational finding. A judgment of acquittal is warranted due to the insufficiency of the evidence presented at trial.

The final point presents a different challenge to the sufficiency of the evidence. In this case, there is no evidence independent of Crayton's statement to show he tampered with the knife or the offense of tampering with physical evidence was committed by Crayton. The only thing shown by the independent evidence is that the authorities were unable to locate the knife. An inability to locate an item of evidence should not be sufficient to independently show commission of the offense of tampering with physical evidence through concealment, destruction, or alteration. After a careful consideration of the evidence adduced at trial, this Court will be unable to find satisfaction of the corpus delicti rule as to the offense of tampering with physical evidence. The judgment should be reformed to an acquittal.

**Point of Error One**

**The trial court abused its discretion by admitting Crayton's recorded statement which does not comply with TEX. CRIM. PROC. CODE art. 38.22 § 3(a)(2) (Supp. CR 5, 4 RR 146).**

- 12 -

## Point of Error Two

**The trial court abused its discretion by admitting Crayton's recorded statement which was obtained after an officer repeatedly ignored Crayton's attempt to terminate the interview and invoke his right to remain silent (Supp. CR 5, 4 RR 146).**

### The Motion to Suppress Hearing

Crayton filed a motion to suppress his January 19, 2012, recorded statement given to Deputy Ward (CR 37). A hearing was held on the motion (2 Supp. RR).

Deputy Rex Campbell, of the Comal County Sheriff's Office, spoke with Crayton on the evening of January 19, 2012 (2 Supp. RR 13). His effort to make a video recording of the interview was unsuccessful and he simply recorded the interview on an audio digital recorder (2 Supp. RR 13, 3 Supp. RR PT SEX 1).

The audio recording is 40 minutes in length (2 Supp. RR 15). Campbell read Crayton his *Miranda* warnings twice during the recording (2 Supp. RR 15). Campbell did not question Crayton concerning the killing of Kitto (2 Supp. RR 16). Campbell's roles were simply to Mirandize Crayton and then babysit him until an officer with knowledge of the killing arrived for interrogation (2 Supp. RR 18). The audio of Campbell's conversation with Crayton was played for the court

- 13 -

(2 RR Supp. 20). During the recording, Crayton acknowledged receiving his warnings from Campbell (2 Supp. RR 22, 3 Supp. RR PT SEX 3).

45 minutes elapsed from the end of Campbell's interrogation until Deputy Ward arrived and started his interrogation (2 Supp. RR 27). Once Ward arrived, Campbell told him that Crayton had received his warnings and Ward commenced his interrogation of Crayton (2 Supp. RR 24). Before questioning, Ward did not give Crayton his warnings, ask Crayton whether he had previously received his warnings, ask Crayton whether he remembered the warnings, or ask Crayton whether he wished to waive his rights (2 Supp. RR 27). Campbell believed there were two separate recordings, his and Ward's (2 Supp. RR 25).

Campbell conceded Crayton was intoxicated during the interrogation (2 Supp. RR 28). Campbell related that he has known Crayton several years and he is always drunk (2 Supp. RR 28). During the interrogation, Crayton told Campbell that he was drunk (2 Supp. RR 30). Campbell did not believe Crayton was so intoxicated that he could not communicate or understand what was happening during the interrogation sessions (2 Supp. RR 32).

Deputy Tommy Ward, of the Comal County Sheriff's Office, interrogated Crayton about Kitto's death on January 19, 2012 (2 Supp. RR 37). He was the first officer to question Crayton about Kitto's death (2 Supp. RR 37). Before

questioning, Ward did not read Crayton his rights, ask him if he had previously received his warnings from Deputy Campbell, or whether he remembered the warnings (2 Supp. RR 43).

Ward identified two recordings of his interview with Crayton (2 Supp. RR 38). The first, PT SEX 6, was made 45 minutes after the conclusion of Campbell's interrogation (2 Supp. RR 38, 3 Supp. RR PT SEX 6). The second, PT SEX 7, was a continuation of the interview depicted in PT SEX 6 (2 Supp. RR 42, 3 Supp. RR PT SEX 7).

The first recording made between Ward and Crayton contains the following statements by Crayton at the designated times: 15:47 I poked him with a knife; 16:57 I got rid of the knife, on the road, I threw it away; 17:08 I threw it on the road on Sorrell Creek; 19:47 You are making this difficult, your right, I'm done with this; 19:51 tell me the truth, no, I'm done; 20:07 go ahead and charge me with aggravated assault; 22:28 just take me to my cell; 22:31 no, I'm not talking to you; 23:48 I'm done, I don't want to talk; 23:55 I don't want to talk about it; 24:19 I threw the knife at Sorrell Creek; 24:29 Man, I'm done with this; 26:03 Don't talk to me, just take me to jail (3 Supp. RR SEX 6).

Ward related that despite Crayton's repeated assertions of "I'm done, take me to my cell, quit talking to me, and I'm not talking to you," he continued the

- 15 -

interrogation because that is what he had been taught in training (2 Supp. RR 46). He did not believe Crayton's reluctance to participate in the interrogation had any significance because Crayton continued to answer questions put to him even after saying he was done, quit talking to me, take me to my cell, and I'm not talking to you (2 Supp. RR 49-50).

At the conclusion of the hearing, Crayton argued the recorded statement was inadmissible under Art. 38.22 because the recording did not contain the required warnings and Ward ignored Crayton's repeated request to terminate the interview and remain silent (2 Supp. RR 54, 56). The trial court delayed a ruling and invited the parties to file briefs on the issues presented (2 Supp. RR 57). Crayton filed his brief and among other things, argued PT SEX 6 was inadmissible because it did not contain recorded warnings as required TEX. CRIM. PROC. CODE art. 38.22 § 3(a)(2) and Ward failed to honor Crayton's repeated attempts to terminate the interview and invoke his right to remain silent (CR 47, 52).

The trial court entered findings of fact and conclusions of law relative to the admissibility of PT SEX 6 (Supp. CR 5). The court concluded there was but a single interview of Crayton by both Campbell and Ward and the 38.22 warnings were properly recorded on Campbell's portion of the interview as recorded in PT SEX 1 (Supp. CR 8). The court further concluded that Crayton clearly indicated his desire to terminate the interview and invoke his right to remain silent at the

26:03 mark of PT SEX 6 and nothing recorded after that point would be admissible at trial (Supp. CR 8).

## The Trial Evidence

During trial, Deputy Tommy Ward, of the Comal County Sheriff's Office, testified he assisted in the investigation (4 RR 139). On January 19, 2012, he interviewed Crayton at the Sheriff's Office after Campbell had spoken with him (4 RR 143). His interview of Crayton was recorded and played for the jury (4 RR 146, 8 RR SEX 73). The recording published to the jury, SEX 73, is a redacted version of PT SEX 6 (4 RR 145-146).

As played for the jury, the interview contains the following statements by Crayton to Ward at the designated times: 1:34 just take me to my cell now; 1:36 no, I ain't telling you nothing; 2:53 I'm done man, I'm done; 2:54 I don't want to talk; 3:01 no I don't want to talk , I'm done; 3:24 I threw the knife at Sorrell Creek; 3:41 I'm done; 5:08 don't talk to me, just take me to my cell now (8 RR SEX 73).

Crayton concedes counsel stated "no objection" when the complained of evidence was introduced at trial. Viewed in context, the statement of "no objection" did not waive the claims now presented. During the suppression hearing, Crayton made clear he sought to preserve the confession question at trial before the jury (2 Supp. RR 39). Crayton engaged in vigorous cross-examination

- 17 -

of Deputy Ward in relation to his deficiencies in the investigation process (4 RR 157-180, 5 RR 8-51 and 71-97). In argument to the jury, counsel noted the deficiencies in the investigation conducted by Ward (6 RR 31-34, 41, and 44). This Court should address the merits of the points presented because the record as a whole plainly demonstrates that Crayton did not intend, nor did the trial court construe, his "no objection" statement to constitute an abandonment of a claim of error that he had earlier preserved for appeal relative to the denial of his motion to suppress the recording. *See Thomas v. State*, 408 S.W.3d 877, 885 (Tex. Crim. App. 2013); *Almaguer v. State*, ___ S.W.3d ___, 2014 WL 5088386, at *8 (Tex. App.—Corpus Christi 2014, pet. filed).

## Standard of Review

A trial court's ruling on a motion to suppress evidence is reviewed on appeal under a bifurcated standard of review. *Amador v. State,* 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, an appellate court does not engage in its own factual review. *Romero v. State,* 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State,* 118 S.W.3d 857, 861 (Tex. App.-Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State,* 214 S.W.3d 17, 24–25

(Tex. Crim. App. 2007); *State v. Ross,* 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen,* 195 S.W.3d 696 (Tex. Crim. App. 2006).

Almost total deference to the trial court's rulings is given on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador,* 221 S.W.3d at 673; *Montanez v. State,* 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State,* 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, the trial court's rulings on those questions is reviewed de novo. *Amador,* 221 S.W.3d at 673; *Estrada v. State,* 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson,* 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, an appellate court must view the evidence in the light most favorable to the trial court's ruling. *Wiede,* 214 S.W.3d at 24; *State v. Kelly,* 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, an appellate court must determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly,* 204

S.W.3d at 818–19.  The trial court's legal rulings are reviewed de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818; *Wilson v. State*, 442 S.W.3d 779, 783-84 (Tex. App.—Fort Worth 2014, pet. filed).

Here, Crayton's challenges to the propriety of the interrogation are legal in nature and do not turn on credibility or demeanor choices made by the trial court upon denying the motion to suppress.  Accordingly, de novo review is appropriate standard of review for this Court upon reviewing the trial court's conclusions of law.

## The TEX. CRIM. PROC. CODE art. 38.22 § 3(a)(2) violation.

Article 38.22 of the Texas Code of Criminal Procedure governs the admissibility of statements made by a defendant during custodial interrogation in a criminal proceeding.  Section 3 provides that an oral statement is admissible against a defendant in a criminal proceeding if, among other things: (1) the statement was electronically recorded; (2) the defendant was given the warnings set out in Section 2(a) before the statement was made and it is included on the recording; and (3) the defendant "knowingly, intelligently, and voluntarily" waived the rights set out in the warnings.  *Herrera v. State*, 241 S.W.3d 520, 525-26 (Tex. Crim. App. 2007).

- 20 -

Here, Crayton argues Ward's entire interrogation Crayton should have been suppressed because the warnings required under 38.22 are not contained within PT SEX 6 (3 Supp. RR PT SEX 6). Although the required warnings are included in Campbell's interrogation, PT SEX 1, that will not suffice to satisfy 38.22 (3 Supp. RR PT SEX 1).

When there are two distinct recordings, and the later does not include 38.22 warnings, courts apply the following analysis to determine whether the interview constitutes separate interviews or but the continuation of a single interview: (1) the passage of time; (2) whether the interrogation was conducted by a different person: (3) whether the interrogation related to a different offense; and (4) whether the officer asked the defendant if he had received any earlier warnings, whether he remembered those warnings, and whether he wished to waive or invoke his rights. *Bible v. State*, 162 S.W.3d 234, 242 (Tex. Crim. App. 2005).

In the case at bar, while the passage of time between the end of the first audiotape interview and the beginning of the videotaped interview in question, PT SEX 6, is approximately 45 minutes, this must be coupled with Crayton's state of intoxication at the time that the 38.22 warnings were given to him. Campbell testified that he believed Crayton was intoxicated when he read him his 38.22 warnings, and that he was concerned that Crayton was intoxicated. Crayton told

Campbell that he was intoxicated. Campbell asked Crayton if he was on drugs. The record shows Campbell was concerned about Crayton's state of intoxication during the interview. Crayton's eyes were red and bloodshot. He had difficulty filling out the waiver of rights for provided to him by Campbell (3 Supp. RR PT SEX 3).

Ward also testified that Crayton was intoxicated during the interview process. Crayton had fallen asleep following the Campbell interview and Ward had to wake him up to start his interrogation of Crayton.

Crayton maintains the Court should consider his level of intoxication when considering the first *Bible* factor. Crayton was intoxicated when he initially received his warnings from Campbell and then fell asleep before Ward commenced to interrogate him 45 minutes later without the benefit of receiving his required warnings. The first Bible factor weighs in support of suppression.

The second *Bible* factor, whether the interrogation was conducted by a different person, also weighs in favor of suppression. Campbell conducted the first interview and Ward conducted the challenged second interview of Crayton.

The third *Bible* factor, whether the interrogation related to a different offense, also weighs in favor of suppression. Campbell merely babysat Crayton and questioned him regarding his evading arrest charge stemming from his conduct

at the time he was apprehended.  Ward, on the other hand, focused exclusively on the charges of murder and tampering with physical evidence.

The final *Bible* factor also weighs in favor of suppression.  Ward never asked Crayton if he had received any warnings earlier, whether he remembered those warnings, and whether he wished to waive or invoke his rights.  Rather than complying with the law, Ward woke up the intoxicated Crayton and commenced to interrogate him without the required warnings being recorded on the videotape of SEX 6.

Under de novo review, this Court should find the trial court abused its discretion by admitting the complained of recording of Crayton's interrogation by Ward because it does not contain the warnings required under TEX. CRIM. PROC. CODE art. 38.22 § 3(a)(2).  Both this Court and the trial court are under a duty to strictly construe the statutory requirements for admission of an oral recorded statement.  *See* TEX. CRIM. PROC. CODE art. 38.22 § 3(e).

A harm analysis is appropriate.  Article 38.22's recording requirement for an oral statement is a procedural evidentiary rule rather than a substantive exclusionary rule.  *Hernandez v. State*, 114 S.W.3d 58, 65 (Tex. App.—Fort Worth 2003, pet. ref'd); *Davidson v. State,* 42 S.W.3d 165, 167 (Tex. App.-Fort Worth 2001, pet. ref'd).  Thus, it is appropriate to apply TEX. R. APP. P. 44.2(b) to

determine whether the error affected Crayton's substantial rights. *Mosley v. State,* 983 S.W.2d 249, 259 (Tex. Crim. App. 1998); *Coggeshall v. State,* 961 S.W.2d 639, 642–43 (Tex. App.-Fort Worth 1998, pet. ref'd).

A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States,* 328 U.S. 750, 776 (1946)). Accordingly, any error must be disregarded unless it affected Crayton's substantial rights. *See Barshaw v. State,* 342 S.W.3d 91, 94 (Tex. Crim. App. 2011). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Coble v. State,* 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). If the improperly admitted evidence did not influence the jury or had but a slight effect on its deliberations, such error is harmless. *Id.* In analyzing the erroneous admission of evidence, the appellate court should consider, among other things: (1) the strength of the evidence of the defendant's guilt; (2) whether the jury heard the same or substantially similar admissible evidence through another source; (3) the strength or weakness of the evidence, including whether the evidence was effectively refuted; and (4) whether the State directed the jury's attention to the inadmissible opinion testimony during arguments. *See id.* at 286–88.

Here, the strength of the evidence of Crayton's guilt is exceedingly weak as supported only marginally by the erroneously admitted recording. The jury did not hear other substantially similar evidence from sources other than Ward's statutorily flawed recording. The assertion of disposing of the knife was not effectively refuted by other evidence. Finally, during closing argument, the prosecutors referred to and relied on the recording by Ward of Crayton's assertion he threw the knife in a creek (6 RR 24, 62).

After considering the appropriate 44.2(b) factors, this Court should find the erroneous admission of Ward's recording had a substantial and injurious effect or influence in determining the jury's verdict. Crayton should be awarded a new trial in which the fact finder will receive only admissible evidence.

**Ignoring Crayton's attempt to terminate the interview**
**and invoke his right to remain silent.**

The right to terminate questioning is among the procedural safeguards established by *Miranda v. Arizona,* 384 U.S. 436, 474 (1966); *Watson v. State,* 762 S.W.2d 591, 596 (Tex. Crim. App. 1988). If an individual indicates in any manner at any time before or during questioning that he wishes to remain silent, the interrogation must cease. *Miranda,* 384 U.S. at 473–74; *Watson,* 762 S.W.2d at 596. There need not be a formal invocation of one's right to terminate an

interview. *Watson,* 762 S.W.2d at 598. Anything said or done by an individual subject to custodial interrogation that could reasonably be interpreted as a desire to invoke that right should be sufficient to halt questioning. *Cooper v. State*, 961 S.W.2d 222, 225 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd). *Watson,* 762 S.W.2d at 596. Police must cease interrogating a suspect once the suspect indicates in any manner, at any time during questioning, that he wishes to remain silent. *Watson*, 762 S.W.2d at 596 (citing *Miranda,* 384 U.S. at 444–45). Whether a suspect has asserted his right to terminate questioning is also decided on the totality of the circumstances in each particular case. *Id.* at 597.

As played for the jury, the interview contains the following statements by Crayton to Ward at the designated times: 1:34 just take me to my cell now; 1:36 no, I ain't telling you nothing; 2:53 I'm done man, I'm done; 2:54 I don't want to talk; 3:01 no I don't want to talk , I'm done; 3:24 I threw the knife at Sorrell Creek; 3:41 I'm done; 5:08 don't talk to me, just take me to my cell now (8 RR SEX 73).

Before the incriminating statement concerning disposal of the knife, Crayton attempted to terminate the interview on five occasions and invoke his right to remain silent. Despite his assertions "just take me to my cell now," "no, I ain't telling you nothing," "I'm done man, I'm done," "I don't want to talk," and "no I don't want to talk" Ward continued the interrogation. Crayton's assertions were unambiguous and the custodial interrogation should have ceased immediately.

- 26 -

Under de novo review, this Court should find the trial court abused its discretion in admitting into evidence anything on the videotape after the point Crayton invoked his right to terminate questioning.

Because the trial court committed a constitutional error in admitting the videotape, this Court is called on to determine whether such error was harmful to Crayton. *Long v. State,* 203 S.W.3d 352, 353 (Tex. Crim. App. 2006). If the appellate record in a criminal case reveals constitutional error in the proceedings below, the appellate court must reverse the judgment under review unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. *Id.* (citing TEX. R. APP. P. 44.2(a)). In calculating the probable impact of the error on the jury, the court is to look at the totality of the circumstances and the record as a whole. *Simpson v. State*, 227 S.W.3d 855, 858-59 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *Miles v. State,* 204 S.W.3d 822, 828 (Tex. Crim. App. 2006).

Here, the strength of the evidence of Crayton's guilt is exceedingly weak as supported only marginally by the erroneously admitted recording. The jury did not hear other substantially similar evidence from sources other than Ward's constitutionally flawed recording. The assertion of disposing of the knife was not effectively refuted by other evidence. Finally, during closing argument, the

prosecutors referred to and relied on the recording by Ward of Crayton's assertion he threw the knife in a creek (6 RR 24, 62).

After considering the appropriate 44.2(a) factors, this Court will be unable to find beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. Crayton should be awarded a new trial in which the fact finder will receive only admissible evidence.

**Point of Error Three**

**The evidence is insufficient to prove Crayton tampered with evidence with knowledge an investigation was pending, in progress, or that an offense had been committed.**

The two paragraph tampering with evidence count alleges Crayton tampered with a knife on January 19, 2012, while knowing an investigation was pending, in progress, or an offense had been committed (CR 8). *See* TEX. PEN. CODE §§ 37.09(a)(1) and 37.09(d)(1). Both statutory theories were submitted to the jury (CR 108). In voir dire, the State mentioned the jury would not be required to unanimously agree on a particular statutory theory in order to convict Crayton of tampering with physical evidence (2 RR 146). By this point of error, Crayton maintains the evidence presented at trial was insufficient to prove he had

- 28 -

knowledge an investigation was pending, in progress, or that an offense had been committed at the time he tampered with the knife.

In evaluating legal sufficiency, all the evidence must be reviewed in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State,* 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)); *Hartsfield v. State,* 305 S.W.3d 859, 863 (Tex. App.–Texarkana 2010, pet. ref'd). The court is called on to examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson,* 443 U.S. at 318–19); *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The evidence at trial showed Young approached Kitto as he took his shirt off and she saw he had a wound to his chest (3 RR 73). Young screamed at Crayton and he left the scene in his vehicle (3 RR 74). The knife used to stab Kitto was not recovered at the scene (4 RR 115).

The tampering with physical evidence statute requires the defendant be aware that the thing he altered, destroyed, or concealed was evidence in the

- 29 -

investigation as it existed at the time of the alteration, destruction, or concealment. *Pannell v. State*, 7 S.W.3d 222, 223 (Tex. App.—Dallas 1999, pet. ref'd). The term pending in the tampering-with-evidence statute means impending, or about to take place. *Lumpkin v. State*, 129 S.W.3d 659, 663 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd).

Crayton relies on *Graves v. State*, ___ S.W.3d ___, 2014 WL 6983635, (Tex. App.—Texarkana 2014, pet. filed). There, the evidence showed the defendant took a pistol from the scene of a shooting before the police were notified of the incident. Finding the evidence insufficient to prove tampering with knowledge an investigation was pending or in progress, the Court concluded the evidence did not support the claim that Graves removed the firearm from the scene at a time when he knew an investigation was pending or in progress. *Graves*, 2014 WL 6983635, at *10.

As in *Graves*, Crayton left the scene with the knife before the authorities were notified of Kitto's stabbing. He claimed to have thrown the knife in a creek. There is no showing of when that act occurred in relation to an investigation in progress or pending. The evidence does not support the theory that Crayton knew an investigation was pending or in progress at the time he tampered with the knife. An acquittal is warranted due to insufficient evidence.

Crayton further argues the evidence is insufficient to prove he knew an offense had been committed at the time he tampered with the knife. The undisputed evidence at trial was that Kitto had been the aggressor and Crayton had done nothing to warrant Kitto's attack. The defensive theory throughout was based on the justifications of self-defense and deadly force in defense of a person. Those justifications were included in the court's charge and argued by counsel in seeking an acquittal. The jury responded by finding Crayton not guilty of the offense of murder as charged in the first count of the indictment.

It is not an offense to use self-defense or deadly force in defense of a person. Those justifications are a defense to an offense. TEX. PEN. CODE §§ 9.02, 9.31, and 9.32. The justifications undermine the forbidden conduct as an element of an offense. *See* TEX. PEN. CODE § 1.07(a)(22)(A). In order to prove knowledge with respect to the nature of his conduct, it was incumbent on the State to prove the circumstances were such that Crayton was aware he had committed an offense. *See* TEX. PEN. CODE § 6.03(b). The use of lawful force to defend himself from Kitto's unlawful attack did not constitute an offense of which Crayton should have been aware. Crayton maintains the facts presented at trial do not show he had knowledge that an offense had been committed at the time he tampered with the knife. The jury's finding to the contrary is not a rational finding. A judgment of acquittal is warranted due to the insufficiency of the evidence presented at trial.

**The state failed to produce independent evidence to corroborate Crayton's extrajudicial statement that he altered, concealed, or destroyed the knife.**

The two paragraph tampering with evidence count alleges Crayton tampered with a knife on January 19, 2012, while knowing an investigation was pending, in progress, or offense had been committed (CR 8). Specifically, Crayton was charged with tampering with the knife by acts which tended to destroy, alter, or conceal it (CR 8). This point of error complains of the State's failure to corroborate Crayton's statement that he tampered with the knife by throwing it in a creek.

Deputy Rex Campbell, of the Comal County Sheriff's Office, went to the scene of Kitto's stabbing and was unable to locate the knife used to stab him (4 RR 115). Deputy Tommy Ward, of the Comal County Sheriff's Office, assisted in the investigation (4 RR 139). On January 19, 2012, he interviewed Crayton at the Sheriff's Office after Campbell had spoken with him (4 RR 143). His interview of Crayton was recorded and played for the jury (4 RR 146, 8 RR SEX 73). As played for the jury, the interview contains the following statement by Crayton to Ward at the designated time: 3:24 I threw the knife at Sorrell Creek.

Ward executed a search warrant at Crayton's home and was unable to find the knife used to kill Kitto (4 RR 148). He did find some bloody clothing at Crayton's home (4 RR 150). Ward additionally executed a search warrant on the truck Crayton drove at the time of the stabbing and his apprehension (4 RR 150). After speaking with Crayton, Ward searched Sorrell Creek on two occasions, but was unable to locate the knife used in the incident involving Kitto (4 RR 148-149).

The common law corpus delicti rule is that no criminal conviction can be based on a defendant's extrajudicial confession unless the confession is corroborated by independent evidence tending to establish the corpus delicti. *Fisher v. State*, 851 S.W.2d 298, 302 (Tex. Crim. App. 1993). The corpus delicti of any crime simply consists of the fact that the crime in question has been committed by someone. *Id.* at 303. The rule does not require that the independent evidence fully prove the corpus delicti, only that it tend to prove the corpus delicti or render the corpus delicti more probable than it would be without the evidence. *Fisher,* 851 S.W.2d at 302–03; *Gribble v. State,* 808 S.W.2d 65, 72 (Tex. Crim. App. 1990). The essential purpose of the corroboration requirement is to assure that no person be convicted without some independent evidence showing that the very crime to which he confessed was actually committed. *Id.* at 71.

In this case, there is no evidence independent of Crayton's statement to show he tampered with the knife or the offense of tampering with physical evidence was committed. The only thing shown by the independent evidence is that the authorities were unable to locate the knife. An inability to locate the knife should not be sufficient to independently show commission of the offense of tampering with physical evidence through concealment, destruction, or alteration.

After a careful consideration of the evidence adduced at trial, this Court will be unable to find satisfaction of the corpus delicti rule as to the offense of tampering with physical evidence. The judgment should be reformed to an acquittal.

**Prayer**

Crayton prays this Court will reverse the judgment of conviction and enter a judgment of acquittal, reverse the judgment and remand for a new trial, or enter any other relief appropriate under the facts and the law.

Respectfully submitted,
/s/ Richard E. Wetzel
Richard E. Wetzel
State Bar No. 21236300

1411 West Avenue
Suite 100
Austin, TX 78701

(512) 469-7943
(512) 474-5594 – facsimile
wetzel_law@1411west.com

Attorney for Appellant
Eric Byron Crayton

## Certificate of Compliance

This pleading complies with TEX. R. APP. P. 9.4. According to the word count function of the computer program used to prepare the document, the brief contains 7,412 words excluding the items not to be included within the word count limit.

/s/ Richard E. Wetzel
Richard E. Wetzel
State Bar No. 21236300

## Certificate of Service

I, Richard E. Wetzel, counsel for appellant, do hereby certify that a true and correct copy of the foregoing document was emailed to counsel for the State, Josh Presley, Assistant Criminal District Attorney, at his email address, preslj@co.comal.tx.us on this the 2nd day of February, 2015.

/s/ Richard E. Wetzel
Richard E. Wetzel
State Bar No. 21236300