**Kenneth Wayne SIMPSON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 14-05-00797-CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 12, 2007.

Arthur C. Washington, Houston, for Appellant.

Alan Curry, Houston, for State.

Panel consists of Justices YATES, ANDERSON, and HUDSON.

## OPINION

J. HARVEY HUDSON, Justice.

Appellant, Kenneth Wayne Simpson, appeals from his felony conviction for aggravated assault. After finding appellant guilty, as charged, the jury found the two enhancement allegations to be true and assessed his punishment at confinement in the Institutional Division of the Texas Department of Corrections for 35 years. In five points of error, appellant contends (1) his recorded statement was made involuntarily in violation of the Texas Rules of Criminal Procedure, Article 38.22;[1] (2) the evidence is legally insufficient to support the verdict; (3) the evidence is factually insufficient to support a verdict of guilty; (4) the State failed to prove striking a person with the butt of a gun is use of a deadly weapon intended to cause serious bodily injury; and (5) the trial court erred in denying his request for a jury instruction on defense of property. Because we

---

1. TEX.CODE CRIM. PROC. ANN. art. 38.22 (Vernon 2005).

will sustain appellant's first point of error and overrule his second point of error, we reverse and remand for further proceedings.

Officer Anderson of the Houston Police Department conducted a custodial interrogation of appellant concerning a possible robbery at an illegal gambling club. A video recording was made of the interview. Anderson read appellant his *Miranda* rights.[2] Anderson began questioning appellant. The pertinent part of the transcript is as follows:

> [Anderson]: I—I don't know. You're not telling me anything and I'm telling you what I'm reading. Then tell me your side of it, tell me what happened, why—what happened?
>
> [Appellant]: It's—it's a bunch of witnesses there so, you know, it'll—it will tell, it will.
>
> [Anderson]: But you don't want to tell me your side?
>
> [Appellant]: No, I don't even want to talk about it because it'll—it'll really tell.
>
> [Anderson]: Okay.
>
> [Appellant]: Yeah.

However, Anderson continued to question appellant, and appellant admitted assaulting Anthony Galentine, but did not admit to robbing him. Appellant's motion to suppress was denied in a pretrial hearing.

▮▮▮ When a defendant makes a pretrial challenge to the voluntariness and admissibility of his confession, the prosecution bears the burden of proving voluntariness by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 486, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex.Crim. App.1995). The court, outside the presence of the jury, must conduct a hearing to determine for itself whether the statement was voluntarily given. Tex.Code Crim. Proc. Ann. art. 38.22 § 6; *see also Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) (establishing the procedure for the voluntariness hearing). Voluntariness is determined by considering the totality of the circumstances. *Creager v. State*, 952 S.W.2d 852, 855 (Tex.Crim. App.1997). We do not disturb the court's ruling unless there is a clear abuse of discretion. *Alvarado*, 912 S.W.2d at 211.

▮▮▮ The right to terminate questioning is a critical safeguard of the Fifth Amendment right to remain silent. *Watson v. State*, 762 S.W.2d 591, 596 (Tex. Crim.App.1988). Police must cease interrogating a suspect once the suspect indicates in any manner, at any time during questioning, that he wishes to remain silent. *Id.* (citing *Miranda*, 384 U.S. at 444–45, 86 S.Ct. 1602). Whether a suspect has asserted his right to terminate questioning is also decided on the totality of the circumstances in each particular case. *Id.* at 597. In response to Anderson's question asking appellant if he wanted to tell his side, appellant answered "No, I don't even want to talk about it ..." "No" is an unambiguous answer—the custodial interrogation should have ceased immediately. Thus, the trial court erred in admitting into evidence the videotape from the point appellant invoked his right to terminate questioning until the end of the tape.

▮▮▮ Because we find the trial court committed a constitutional error in admitting the videotape, we must determine whether such error was harmful to appellant. *Long v. State*, 203 S.W.3d 352, 353 (Tex.Crim.App.2006). If the appellate record in a criminal case reveals constitutional error in the proceedings below, the appellate court must reverse the judgment

---

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

under review unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. *Id.* (citing TEX.R.APP. P. 44.2(a)). In calculating the probable impact of the error on the jury, we look at the totality of the circumstances and the record as a whole. *Miles v. State,* 204 S.W.3d 822, 828 (Tex.Crim. App.2006). The State's main evidence consisted of the confession, testimony by Galentine and the arresting officer, and a gun and gun clip collected during the chase.

The prosecutor's first sentence in his opening statement was "The first and most important thing that the twelve of you need to know about this case is that it's a confession case." The State's attorney talked further about the confession, other evidence, and then finished with an additional reference to the confession. During its case in chief, the State called Anderson and played the entire videotape. The only eyewitness called by the State was Galentine. Part of the complainant's testimony was disputed by the State's final witness, the officer who arrested appellant. The defense called no witnesses.

Anderson testified she could not recall appellant saying he did not want to talk. She stated she listened for it during the trial presentation, and could not "catch" it. Anderson testified that in her opinion appellant did not attempt to terminate the interview.

Galentine testified appellant pulled a gun on him, took all the money he had, and then hit him on the head with the gun, drawing blood and causing the gun to discharge into the air. Galentine explained he left the club, started driving home, and then decided to call the police from his cell phone. He arranged to meet Officer Running at a corner near the club. Galentine also testified when Running drove up to appellant's house, appellant was standing next to a man, talking "about the incident, I assume." Galentine said appellant ran away when Running exited the car.

Part of Officer Running's testimony differed from Galentine's. Running stated that the call to 911 did not come from a cell phone, it came from a pay phone across the street from the corner where he met Galentine. Running also testified Galentine did not lock a car or secure anything when they went to look for appellant. Running added he was not aware that Galentine had a car at the scene and when he dropped him back at the corner, he did not observe Galentine get into a car. Running further testified that when he drove up to appellant's house, appellant was standing on his driveway and another man was standing approximately thirty feet away.

When Galentine identified appellant, Running exited the car and told appellant to place his hands on his head. Instead, appellant ran off and Running chased after him, while Galentine stayed by the car. Running lost appellant in the neighborhood. Running testified he recovered a gun with an empty shell casing inside, in a neighbor's backyard, while he was back-tracking "on the same path" that he had chased appellant. The empty shell casing showed the gun had been fired at some point. However, Running did not see appellant discard anything during the chase. Running also recovered a fully loaded gun clip, whose bullets matched the caliber in the gun, from appellant's front porch. Running acknowledged he did not know who placed the gun in the neighbor's yard or the clip on the porch, and both areas were unobserved during the chase.

No tests for fingerprints were run on the gun, shell casing, or clip. No bullet was recovered from the club and, therefore, no ballistics were run. No pictures were taken of the inside of the club, and no

witnesses were interviewed. Galentine refused medical attention, and no pictures were taken of any injuries. There was no blood found at the scene, or on the butt of the gun. In fact, no physical evidence linked this particular gun to the alleged incident.

The State's attorney began his closing statement with: "The decision to find this defendant guilty of aggravated assault should be the easiest decision you make all week. And the reason is because you have a video confession where he's telling the detective, if anything it was aggravated assault. Now that I did do." The State continued referencing the confession throughout its closing argument, at one point stating: "So I don't want you to get bogged down in any evidence relating to this gambling and whose money it belonged to and who had a greater right to possession of the money, because really and truly, that doesn't matter at all ... [because] he admitted it." At one point the State referred to Galentine's testimony, and then returned to the proof afforded by the confession. Out of a ten-paragraph closing argument, nine paragraphs involved the confession. After the defense's closing argument, the prosecutor's rebuttal again focused on the confession:

This confession is like an elephant sitting in the courtroom. The sheer weight of it alone, it should take you-all 15 minutes to return a verdict of guilty just based on that alone.

What are you going to do when your client has so completely confessed on videotape, what are you going to do? Well, you're going to say, well, the investigation went bad. Well, there are no fingerprints. To that I say so what, he confessed. There were no ballistics. As the officer said, there was no spent round found to compare to the weapon. So what? He confessed.

He says you didn't find any medical records or whatnot. So what? He confessed ...

The State repeatedly emphasized the video, downplaying other evidence or the lack of evidence as unimportant in light of the confession. Part of Galentine's testimony was contradicted by Running's testimony. There was no physical evidence collected at the scene of the incident, and no physical evidence collected from the gun, appellant, or Galentine. Under these facts, we cannot conclude beyond a reasonable doubt that the admission of appellant's confession did not contribute to his conviction and, thus, we sustain appellant's first point of error. TEX.R.APP. P 44.2(a).

In his second point of error, appellant challenges the legal sufficiency of the evidence. A legal sufficiency challenge calls for appellate review of the relevant evidence in the light most favorable to the prosecution. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Swearingen v. State,* 101 S.W.3d 89, 95 (Tex.Crim.App.2003). We consider all the evidence that sustains the conviction, whether properly or improperly admitted or whether introduced by the prosecution or the defense, in determining the legal sufficiency of the evidence. *Conner v. State,* 67 S.W.3d 192, 197 (Tex.Crim. App.2001). The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence. *Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex.Crim.App. 2000). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State,* 867 S.W.2d 43, 47 (Tex.Crim.App.1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm.

*McDuff v. State,* 939 S.W.2d 607, 614 (Tex. Crim.App.1997).

 Appellant complains the evidence was legally insufficient to support his conviction for aggravated assault because the State failed to prove all the elements of aggravated assault; the State failed to demonstrate the manner in which the weapon was used meets the legal definition of a deadly weapon; and the State failed to negate appellant's defense of property claim.[3] Galentine testified that he and appellant had words over the rules of a dice game, and money. Galentine stated appellant pulled a semi-automatic handgun and pointed it at his chest and head. Galentine said he told appellant to put down the gun, but appellant said "no, I ought to shoot you." Galentine further testified he felt "like I was fixing to die at that moment." Galentine explained appellant struck him on the head with the butt of the gun, causing the gun to "split my head to where blood was coming out of it." Galentine also stated the gun fired when appellant hit him with it.

 A firearm is, per se, a deadly weapon.[4] The indictment charged that appellant threatened Galentine with "imminent bodily injury by using and exhibiting a deadly weapon, namely, a firearm," and caused Galentine bodily injury by "using a deadly weapon, namely, a firearm." Galentine testified appellant aimed the gun at him, threatened to shoot him, hit him with the gun, and the gun discharged. The fact that Galentine's injury was caused by the butt of the gun instead of a bullet is of no consequence.

Appellant did not testify. However, appellant's video confession was before the trial court. In the video, appellant admitted pulling a semi-automatic gun on Galentine that appellant had purchased "off the street." Appellant acknowledged punching Galentine, but denied using his fist or the gun. Additionally, the video showed appellant claiming ownership of the money in dispute. Galentine testified appellant drew a gun and took the money from the dice game, as well as money Galentine had in his pocket. The jury is the sole arbiter when assessing the credibility of the witnesses, weighing the evidence, and resolving any conflicts. We presume the jury did not accept appellant's explanations. Viewing all the relevant evidence in the light most favorable to the prosecution, we determine the jury could rationally find, beyond a reasonable doubt, each element of aggravated assault and, thus, the evidence is legally sufficient to support the verdict. Accordingly, we overrule appellant's second point of error.

Because we sustain appellant's first point of error and overrule appellant's second point of error, we do not reach appellant's remaining points of error. Having found appellant's confession was involuntary and its admission as evidence contributed to appellant's conviction, we reverse the judgment of the trial court and remand

---

3. The indictment alleged appellant "did then and there unlawfully, intentionally and knowingly threaten Anthony Galentine with imminent bodily injury by using and exhibiting a deadly weapon, namely, a firearm" and "did then and there unlawfully, intentionally and knowingly cause bodily injury to Anthony Galentine by using a deadly weapon, namely, a firearm." *See* TEX. PENAL CODE ANN. §§ 22.01, 22.02 (Vernon Supp.2006).

4. The statute, in the pertinent part, reads:

(17) "Deadly weapon" means:
(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; ...
TEX. PENAL CODE ANN. § 1.07(a)(17)(A) (Vernon Supp.2006).

the cause for further proceedings consistent with this opinion.