# NO. 12-21-00226-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MARCUS LAMONT ALLEN,* *APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Marcus Lamont Allen and the State of Texas filed motions for rehearing, which were granted. We withdraw our opinion and judgment of October 21, 2022, and substitute the following opinion and judgment in its place.

Marcus Lamont Allen appeals his conviction for felony assault family violence. In two issues, Appellant argues that the trial court abused its discretion by overruling his objection to a portion of the State's jury argument and in admitting two exhibits over his objection. We reverse and remand.

## BACKGROUND

Appellant was charged by indictment with felony assault family violence.[1] The indictment further alleged that Appellant previously was convicted of evading arrest with a vehicle. Appellant pleaded "not guilty" to the charge and pleaded "not true" to the jurisdictional enhancement of assault family violence under Texas Penal Code, Section 22.01(b)(2)(A). The matter proceeded to a jury trial. The jury found Appellant "guilty" as charged and the matter proceeded to a trial on punishment, at which Appellant pleaded "true" to the enhancement allegation of evading arrest with a vehicle. Following the presentation of evidence and argument of counsel, the jury assessed

---

[1] *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(A) (West Supp. 2022).

Appellant's punishment at imprisonment for twenty years. The trial court sentenced Appellant accordingly, and this appeal followed.

## PROSECUTORIAL STATEMENTS DURING JURY ARGUMENT

In his first issue, Appellant argues that the trial court abused its discretion by overruling his objection to a portion of the State's jury argument during the guilt-innocence phase of trial because such argument amounted to a comment on his exercise of his right to a jury trial.

## Standard of Review and Governing Law

We review the trial court's ruling on an objection to jury argument for abuse of discretion. *Smith v. State*, 483 S.W.3d 648, 657 (Tex. App.–Houston [14th Dist.] 2015, no pet.); *Nzewi v. State*, 359 S.W.3d 829, 841 (Tex. App.–Houston [14th Dist.] 2012, pet. ref'd). We analyze the argument in light of the entire record and not upon the argument's isolated occurrence. *See DeLarue v. State*, 102 S.W.3d 388, 405 (Tex. App.–Houston [14th Dist.] 2003, pet. ref'd). Proper jury argument (1) summarizes the evidence, (2) makes reasonable deductions from the evidence, (3) responds to arguments of opposing counsel, or (4) pleads for law enforcement. *See Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000).

## The Parties' Arguments at Trial

In the guilt-innocence phase of trial, in its opening statement, the State stated, in pertinent part, as follows:

> You are also going to get to hear from a crime scene investigator, who is a specialist in fingerprints. You've just heard the defendant stand up and you heard the defendant tell you that the prior that I read in the indictment was not true. As I explained to y'all in voir dire yesterday, in order for an assault that's just an assault to be a felony, there has to be a prior. So by virtue of him pleading not true, you will hear from a crime scene detective who is going to tell you that he looked at the judgment and the sentence of that, he's compared it to documents that he has access to linked specifically to this defendant, and that he can definitively tell you it is one in the same, Marcus Allen, that has been convicted. I don't get to tell you why people do what they do, but I will tell you this, remember yesterday I told you no matter what the evidence is, no matter what the situation is, a defendant has an absolute right to trial. And they have an absolute right to do what they want to do at trial as long as it's within the law.
>
> . . . .
>
> Again, [the Defendant] can do whatever he wants to do, but at the end of the day, this is simply going to be a case where you're going to decide that this is nothing more than the defendant exercising his right to a trial because the evidence presented to you is going to be overwhelming that he's guilty.

After the presentation of evidence, in its initial closing argument, the State asserted to the jury,

> And, really, also your deliberation is kind of a mini two-step process, because not only are we talking about the events of May 17th of 2020, you've also got to find beyond a reasonable doubt that he was, in fact, convicted of family violence before. So what's the evidence to that? Well, you heard Travis Breazeale. He's got over 20 years as a peace officer and ten-plus years as a criminal specialist; testified to you about the fingerprint process and judgments and how you know. And in State's 2, you even have this prior judgment. And Investigator Breazeale told you how he rolled the defendant's fingerprints himself, confirmed that was Marcus Allen, confirmed some of the other specific identifiers.
>
> This judgment doesn't have fingerprints, but he was able to match it to Marcus Allen through name, through birth date, through that PID number that he said matched another one that he reviewed that he confirmed that did have fingerprints. So you've heard definitive expert testimony that this, in fact, is the same man.
>
> And that's important because that's what makes this a felony, right? Mr. Chamness explained it to you. If you commit assault family violence with a prior conviction of assault family violence, that's what makes it a felony.

In response, Appellant argued to the jury as follows:

> It's just like the right to a jury trial. You have a right to a jury trial on every element of the case. The State will say -- get up here in opening statements and say, I don't know why they do the things they do, you know, trying to say, Well, he should have pled true to something -- you can't hold that against him because -- he did this, this is him. We're not arguing that. I'm not standing up here arguing for it or arguing that at all. But he has a right, a constitutional right that you said that you agreed you couldn't hold against him, right, to make the State prove each and every element of the case. This is one of them, right?

In its rebuttal argument, the State retorted,

> [Appellant's counsel] wants to call her a liar. Let me tell you what. That guy right there (indicating) is an abusive coward. That's exactly who he is. He stood up in front of y'all, pled not guilty, which he can do, to an offense that he clearly committed. But then, just to show you how obstinate he is, he told you, I don't have a prior conviction either.
>
> [Appellant's counsel] says, Well, that's his right. Sure is his right. He wants to waste your time and he wants to lie to you under oath, do it. But guess what? Paragraph 6, you can take that into account.[2]

---

[2] Paragraph 6 of the court's charge instructed the jury as follows:

[I]f there is any testimony before you in this case regarding the defendant's having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any . . . [,] and even then[,] you may only consider the same in determining the intent, plan, scheme, knowledge, or identity of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose.

Appellant objected to the prosecuting attorney's argument on the ground that it sought to have the jury hold against Appellant his exercise of his right to a jury trial. The trial court overruled Appellant's objection. Ultimately, the jury assessed Appellant's punishment at the maximum term of imprisonment of twenty years.

**Discussion**

"The Fourteenth Amendment to the United States Constitution guarantees a right to trial by jury in all criminal cases that, were they to be tried in a federal court, would come within the Sixth Amendment's guarantees." *Eason v. State*, No. 05-10-01232-CR, 2012 WL 2444780, at *3 (Tex. App.–Dallas June 28, 2012, no pet.) (op., not designated for publication); *Chaouachi v. State*, 870 S.W.2d 88, 90 (Tex. App.–San Antonio 1993, no pet.); *see also* U.S. CONST. amend. VI ("[I]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial"). Article I, section 10 of the Texas Constitution guarantees the right to trial by jury in criminal prosecutions. *Chaouachi*, 870 S.W.2d at 90; *see also* TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. arts. 1.05, 1.12 (West 2005); *Franklin v. State*, 576 S.W.2d 621, 623 (Tex. Crim. App. 1978). It is impermissible to impose a penalty for the exercise of a constitutional right. *See Villarreal v. State*, 860 S.W.2d 647, 649 (Tex. App.–Waco 1993, no pet.) (right to jury trial guaranteed under Sixth and Fourteenth Amendments; prosecutor's comments about defendant's forcing victim to testify [by virtue of proceeding to trial] were improper because penalty cannot be imposed for exercise of constitutional right).[3] "When a comment is made by a prosecutor regarding a defendant's election to proceed with a jury trial, the concern of the court centers around whether the prosecutor had, in effect, asked the jury to punish or otherwise penalize the defendant for exercising his right to a trial by jury." *Carlock v. State*, 8 S.W.3d 717, 724 (Tex. App.–Waco 1999, pet. ref'd).

**Propriety of the State's Jury Argument**

The State first argues that the prosecuting attorney's argument was not improper. In so doing, it relies on *Anderson v. State*, 742 S.W.2d 541, 542–43 (Tex. App.–Waco 1987), *vacated on other grounds*, 760 S.W.2d 262 (Tex. Crim. App. 1988). In *Anderson*, the prosecuting attorney

---

[3] "It is improper for a prosecutor in argument to refer to a defendant's exercise of his right to a jury trial. This conclusion follows from the premise that it is impermissible to impose a penalty for the exercise of a constitutional right." *Carter v. State*, No. 01–98–00556–CR, 1999 WL 517130, at *6 (Tex. App.–Houston [1st Dist.] July 22, 1999, pet. ref'd) (op., not designated for publication); *see also Eason v. State*, No. 05-10-01232-CR, 2012 WL 2444780, at *3 (Tex. App.–Dallas June 28, 2012, no pet.) (op., not designated for publication).

stated that the defendant pleaded "not true" at the outset of the trial on punishment and that, as a result, the state had to call a fingerprint expert to prove up the conviction. *See id.* The state continued, "He doesn't want to fess up. Not at all." *Id.* at 543. The defendant objected that the prosecutor improperly commented on his failure to testify, and the trial court overruled his objection. *Id.* The court of appeals expressed doubt that the prosecutor's statement was a comment on the appellant's failure to testify before proceeding to resolve the issue by conducting a harm analysis. *See id.* We are not persuaded that this expression of doubt renders *Anderson* sufficiently analogous to permit us to hold that the prosecuting attorney's comments here are appropriate in the face of Appellant's comparatively distinct objection that they amounted to an improper comment on his exercise of his right to a jury trial.

In the instant case, the State first raised the matter of Appellant's decision to plead "not true" to the jurisdictional enhancement in its opening statement to the jury during the guilt-innocence phase of trial. It did so in a way that, while not overtly critical of Appellant's decision, certainly was capable of raising the question in the jurors' minds that Appellant may have had reasons for doing so apart from his exercise of his constitutional rights, which rights the prosecutor emphasized to the jury. In its initial closing argument, the State made no reference to Appellant's decision to plead "not true" to the jurisdictional enhancement allegation. In Appellant's closing argument, he paraphrased the prosecuting attorney's statement from his opening statement, "I don't get to tell you why people do what they do," and reminded the jury that it cannot hold Appellant's decision to exercise his constitutional right to a jury trial against him and that the State must prove each element of its case.

In rebuttal, the State called Appellant an "abusive coward" and noted that Appellant pleaded "not guilty" to an offense "he clearly committed." And although the prosecutor acknowledged that Appellant had a right to a jury trial, he persisted, couching Appellant's underlying intent for his plea of "true" as obstinance, by stating "he told you I don't have a prior conviction either." And while the prosecuting attorney followed this statement by agreeing with defense counsel that Appellant has a right to a jury trial, we note that such a statement rings hollow since, on its heels, the prosecutor attributed to Appellant, an underlying intent of wanting to waste

5

the jurors' time and lie under oath to them.[4]  Lastly, we cannot overlook that the prosecuting attorney immediately followed these accusations of Appellant's ill intent with a reference to Paragraph 6 of the court's charge to preface his statement to the jury, "you can take that into account."  And though the record reveals that Paragraph 6 instructs the jury that it cannot consider evidence of Appellant's commission of other offenses unless such offenses are proved beyond a reasonable doubt, and then, only for specific purposes in connection with the charged offense,[5] the apparent implication of this statement is that the jury "can" and should hold Appellant's decision to plead "not true" to the jurisdictional enhancement against him.

Based on the foregoing, we conclude that the prosecuting attorney improperly commented on Appellant's exercise of his right to a jury trial, and in so doing, sought to compel the jury to punish or otherwise penalize Appellant for exercising this right by suggesting to the jury that he exercised his right for the purpose of wasting the jury's time and his general dishonesty.  *See Villarreal*, 860 S.W.2d at 649 (prosecutor argued defendant forced victim to come to courtroom to testify in front of a bunch of strangers); *Wages v. State*, 703 S.W.2d 736, 740 (Tex. App.– Houston [14th Dist.] 1986), *pet. dism'd improvidently granted*, 770 S.W.2d 779 (Tex. Crim. App. 1987) (prosecutor's argument was that the reason jury had to come to court for four days was because defendant insisted on trial); *see also Eason*, 2012 WL 2444780, at *4 (if prosecutor made reference to defendant's exercising his right to jury trial in way calculated to place blame upon defendant for exercising that right, such would constitute error).

## Invited Argument

The State next argues that if the prosecutor's comments were impermissible, the trial court did not abuse its discretion in overruling Appellant's objection because Appellant "invited" the State's argument.  Under the invited argument rule, a defendant cannot complain of improper prosecutorial argument if he invited the argument.  *Watts v. State*, 371 S.W.3d 448, 458 (Tex. App.–Houston [14th Dist.] 2012, no pet.) (citing *Ripkowski v. State*, 61 S.W.3d 378, 393 (Tex. Crim. App. 2001)).  If the defendant's counsel goes outside the record in his argument, the

---

[4] Appellant elected not to testify in either phase of his trial.  So, the only statement to which the prosecutor's statement that Appellant wants to "lie" to the jury could apply is his plea of "not true" to the jurisdictional enhancement allegation.

[5] *See* TEX. R. EVID. 404(b) (evidence of crime, wrong, or other act not admissible to prove person's character in order to show that on a particular occasion, person acted in accordance with such character, but may be admissible for another purpose such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident).

prosecutor is also permitted to go outside the record to respond as long as the response is within the scope of the invitation. *Watts*, 371 S.W.3d at 458.

Here, Appellant's statement in his closing argument was made in direct response to the State's opening statement made during guilt-innocence. Appellant paraphrased the State's comments and emphasized to the jury that his right to a trial by jury could not be held against him. In rebuttal, the prosecutor not only responded to Appellant's argument but greatly escalated the matter by his comments, in which he attributed malevolent intent to Appellant for exercising his constitutional right to a jury trial. We disagree with the State that its excessive rebuttal to Appellant's response to a matter it first raised was invited by Appellant. *See id.* Therefore, we hold that the trial court abused its discretion in overruling Appellant's objection to the State's jury argument.

## CONSTITUTIONAL HARM ANALYSIS

Having concluded that the trial court abused its discretion in overruling Appellant's objection, we now consider whether Appellant was harmed by the trial court's ruling. Because the error at hand implicates Appellant's rights under the United States and Texas constitutions, we review the error pursuant to Texas Rule of Appellate Procedure 44.2(a). *See* TEX. R. APP. P. 44.2(a).

### Standard of Review

Constitutional error is harmful unless a reviewing court determines beyond a reasonable doubt that the error did not contribute to the conviction. *Id.* In applying the harmless error test, the primary question is whether there is a "reasonable possibility" that the error might have contributed to the conviction or punishment. *Vasquez v. State*, 484 S.W.3d 526, 532 (Tex. App.– Houston [1st Dist.] 2016, no pet.); *see also Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

In conducting a constitutional harmless error analysis, we do not focus on the propriety of the outcome of the trial, but instead "calculate as much as possible the probable impact of the error on the jury in light of the existence of other evidence." *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000); *Vasquez*, 484 S.W.3d at 532. We must evaluate the record in a neutral, impartial, and even-handed manner, not in the light most favorable to the prosecution. *Vasquez*, 484 S.W.3d at 532. We consider the nature of the error, the extent to which it was emphasized by

7

the state, its collateral implications, and the weight a jury likely would assign it. *Id.* (citing *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011)). These factors are not exclusive, and other considerations may inform our harm analysis. *Id.* The question we must answer in reviewing constitutional error for harm is not whether the jury verdict was supported by the evidence, but rather, the likelihood that the constitutional error actually was a contributing factor in the jury's deliberations in arriving at that verdict. *See Wells v. State*, 611 S.W.3d 396, 410 (Tex. Crim. App. 2020). At bottom, an analysis for whether a particular constitutional error is harmless should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether beyond a reasonable doubt that particular error did not contribute to the conviction or punishment. *Vasquez*, 484 S.W.3d at 532; *see also Simpson v. State*, 227 S.W.3d 855, 858–59 (Tex. App.–Houston [14th Dist.] 2007, no pet.) (if appellate record in a criminal case reveals constitutional error in proceedings below, appellate court must reverse the judgment under review unless it determines beyond a reasonable doubt that error made no contribution to conviction or to punishment).

At the outset of our review, we presume reversal of constitutional error is required. *See Morris v. State*, 554 S.W.3d 98, 124 (Tex. App.–El Paso 2018, pet. ref'd). The state has the burden, as beneficiary of the error, to prove that the error is harmless beyond a reasonable doubt. *Haggard v. State*, 612 S.W.3d 318, 328 (Tex. Crim. App. 2020) (citing *Deck v. Missouri*, 544 U.S. 622, 635, 125 S. Ct. 2007, 2015, 161 L. Ed. 2d 953 (2005)). Thus, unlike nonconstitutional error under Rule 44.2(b), the State is required to come forward with reasons why the appellate court should find constitutional error harmless. *See Lamb v. State*, 603 S.W.3d 152, 162 n.16 (Tex. App.–Texarkana 2020, no pet.) (declining independently to evaluate constitutional harm analysis factors in absence of any briefing by the state asserting harmless error); *Merritt v. State*, 982 S.W.2d 634, 636 (Tex. App.–Houston [1st Dist.] 1998, pet. ref'd, untimely filed).

**Nature of the Error**

We first consider the nature of the error. Here, the nature of the error is an erroneous trial court ruling on the defense's objection to improper jury argument from the State, which constituted an improper comment on Appellant's exercise of his right to a jury trial. As set forth above, both the United States and Texas constitutions protect a criminal defendant's right to a jury trial, and it is impermissible to impose penalties for the exercise of a constitutional right. *See Villarreal*, 860 S.W.2d at 649; *Chaouachi*, 870 S.W.2d at 90.

8

As set forth above, we concluded that the prosecutor sought to compel the jury to punish or otherwise penalize Appellant for exercising this right by suggesting to the jury that he exercised his right for the purpose of wasting the jury's time and his general dishonesty. *See Villarreal*, 860 S.W.2d at 649; *Wages*, 703 S.W.2d at 740; *see also Eason*, 2012 WL 2444780, at *4. The State's improper argument did not advance any legitimate purpose. *Coleman v. State*, 577 S.W.3d 623, 639 (Tex. App.–Fort Worth 2019, no pet.) (purpose of jury argument is "to facilitate the jury in properly analyzing the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the evidence alone and not on any fact not admitted in evidence"). By making this argument, the State encouraged the jury to punish Appellant not merely for the charged offense but based also on the personal affront he committed to the jury itself through his dishonesty and wasting of the jury's time. *Cf. id.* at 640. Lastly, in making this argument, the prosecuting attorney instructed the jury that it was authorized by the court's charge to consider Appellant's dishonesty and desire to waste the jury's time. And while Paragraph 6 of the court's charge sets out specific circumstances under which the jury can consider evidence of other offenses, the State's cursory reference to this instruction failed to indicate to the jury how Appellant's dishonesty and desire to waste the jury's time resulting from his plea amounted to an offense or otherwise fell within the circumstances for which they could consider such evidence as outlined in Paragraph 6. As such, we concluded that the State's hasty reference to Paragraph 6 simply invited the jury to hold Appellant's decision to plead "not true" against him.

## Emphasis on the Error

Based on our review of the record, we observe that as early as voir dire proceedings, the State planted the seed with the venire panel that in spite of a defendant's right to a jury trial, the exercise of that right could feel like a waste of time. Specifically, the prosecuting attorney told the venire panel,

> [A defendant has] an absolute right to trial by jury no matter how much evidence there is against [him]. Does everybody understand that? That's another one of those things where, at the end of the day, I can't tell you what to consider, what not to consider. I can't tell you that you may not feel like that your time has been wasted, but I want everyone to understand that no matter how overwhelming the evidence is in a case, a defendant has an absolute right to a jury trial. Does everyone understand that?

> . . . .

> And even as a prosecutor, I think that's a good right for them to have.

> I'm not going to lie to you. There have been cases that I've tried in the past where I felt like it was a waste of my time and a waste of the jurors' time, and I would do it again and again and again because that is a constitutional right that belongs to the defendant.

As set forth in our discussion of the parties' arguments above, the State continued to cultivate this theme in its opening statement during the guilt-innocence phase of trial. And, ultimately, after Appellant, during his closing argument, responded to the State's argument on this issue, the State took the opportunity to escalate its argument in its summation. There, it told the jury that Appellant is an "abusive coward[,]" who pleaded "not guilty" to an offense "he clearly committed" and despite Appellant's right to a jury trial, his underlying intent for his plea of "not true" to the jurisdictional enhancement was based on obstinance, a desire to waste the jurors' time, and a desire to lie under oath to them.

After the trial court overruled Appellant's objection to its escalated argument, the State once again revisited its theme that Appellant's plea and exercise of his right to a jury trial was nothing more than a perfunctory exercise of his rights, before again echoing its previous argument that Appellant's plea amounted to dishonesty, which the jury could consider without limitation. Specifically, the State argued,

> But I submit to you when I told y'all in voir dire that there are some cases where it's just abundantly clear what happened and at the end of the day it simply is nothing more than the defendant exercising their right to a trial, that's what we have here. I'm not asking you to punish him for that. What I am saying is that when he knows he's been convicted of a prior family violence and he stands up and tells you that he hasn't, and then we prove it, you can take that into consideration. You can take all of the things that he did post assault into consideration if you believe it beyond a reasonable doubt. You can take into account -- folks, you can even make inferences, the charge tells you that.

**Probable Implications of the Error**

During the course of criminal proceedings, it is not unusual for a jury to hear things a defendant may have done which affect the jury's opinion of that defendant in a detrimental way. But this court hardly can imagine such a direct affront to the jury and its function than for a defendant to be accused by a prosecutor of wasting the jury's time by exercising his right to a jury trial for dishonesty's sake.

Indeed, as is common, both the prosecuting attorney and Appellant's trial counsel repeatedly thanked the jury for its time at all phases of trial. For instance, at the outset of voir dire, the State thanked the venirepersons for being there and, further, told them, "[W]e understand that it's an imposition on your time, [which] . . . takes away from your family, . . . your job, . . . [and]

things you enjoy doing . . . .   We are cognizant of your time . . . .   [N]obody is happy to be here, . . . [b]ut . . . we appreciate your time for being here."  Similarly, during Appellant's voir dire, his counsel told the jury, "If you will take a deep breath and stay with me for the questions that I do have, I will not waste any of your time.  I won't keep you up here any longer than is necessary."  Later in voir dire, Appellant's counsel told the jury,

> And I just want to reiterate what [the prosecuting attorney] said and thank you all for being here . . . .  And we couldn't do it without you.  So from the bottom -- I really do thank you all for being here.  I thank you for the attention you've paid.  I know this is not necessarily enjoyable.  There's a million different things you could be doing from work to family to church, whatever those may be, but, you know, we couldn't do it without you so thank you all for being here and paying close attention to the time that we have here today.

Appellant's counsel repeated his appreciation for the jury's service at the end of his voir dire examination.  Further still, at the end of his closing argument, Appellant's attorney stated,

> I want to thank you all for your time. I want to thank you all for paying attention.  I know it hasn't been that long, but to y'all it's drug on and on and on.  We couldn't do it without you.  I really do mean that.  I've said it before, I'll say it again -- I'll say it to you every time I see you -- we couldn't do this without you all showing up and being here, so I really appreciate all of your time and attention.

Appellant's counsel revisited this theme of appreciation in his closing argument on punishment as well.

Based on these statements, we do not doubt the critical importance to the parties in this case that the jury understand their respect and appreciation for the jurors' giving up their time to do their civic duty.  Thus, the State's accusation that Appellant, by his exercise of his right to a jury trial, was wasting the jury's time so he could lie to them, undoubtedly struck at the heart of a very important theme in the case for both parties.  In making this argument, the State uplifted itself as a champion of the juror's time while potentially seeding resentment in the jury toward Appellant for wasting its time and potentially causing Appellant's counsel's statements of appreciation for its service to be interpreted as mere platitudes.

Lastly, we cannot understate the critical effect of the prosecutor's statement to the jury made on the heels of his statement that Appellant was wasting its time that Paragraph 6 of the charge authorized it to consider that fact and hold it against Appellant where Paragraph 6 related to the jury's consideration of other offenses, and further, limited its consideration of such evidence

to certain purposes authorized by Texas Rule of Evidence 404(b). And while Appellant did not specifically object to this mischaracterization of the charge by the prosecuting attorney, the statement undoubtedly magnified the improper statement about Appellant's exercise of his right to a jury trial, urged the jury to consider his "not true" plea to be an offense, and encouraged the jury to consider it more broadly than it might be entitled to do under the law as stated in the court's charge.

**Weight Jury Assigned the Error**

In its brief, the State argues that the strength of its case against Appellant supports a finding of harmlessness beyond a reasonable doubt. The State's direct evidence in support of its case largely can be attributed to the victim, Latosha Jones. She testified that on May 17, 2020, during an argument over money, Appellant punched her in the head, pulled her hair, and dragged her down the hall by her hair while their baby was in the couple's apartment. The jury also considered testimony from Officer Justin Kuehn, who, after he received Jones's complaint, returned with her to her apartment to check on the welfare of the child. The jury heard testimony from Jones that once inside, as Appellant packed his bags, Kuehn questioned Jones's credibility, which he described as "swirling down the drain" in response to Jones's complaint that Appellant was taking her phone and her alcohol. Kuehn testified that he did not observe any visible injuries on Jones's face at that time and that she did not volunteer information to him about any other injuries she may have had. The jury further heard testimony that Jones told Kuehn she did not want to press charges and that Kuehn did not arrest Appellant that night, but rather, drove him to another apartment complex in town as a courtesy.

In its supplemental brief, the State emphasizes the testimony of Josue Gonzalez, who lived in the same apartment complex as Appellant and Jones. Gonzalez's testimony corroborated Jones's testimony to a degree. Specifically, he testified that he was in his apartment with friends on the day in question when he heard a noise he described as "Boom, pow," heard people arguing, and heard a woman yell, "Help, help. Why are you hitting me?" Later, according to Gonzalez, as he and his friends were leaving, he saw a man at the foot of the stairs and the woman was on her knees on the floor. Gonzalez stated that he heard the woman yell, "Call the police because he's fixing to kill me." Gonzalez further stated that Appellant told him, "Mind yo business." Gonzalez testified that in response, he returned to his apartment. But the jury also considered the testimony of Matthew Cortes, who was with Gonzalez at that time, and who stated he did not hear anyone

"hollering" when they were inside Gonzalez's apartment. He further stated that when they left the apartment, he saw a man and woman standing at the middle of the flight of stairs. Cortes testified that the woman was not yelling and did not appear to be in distress but did ask them to call police. He further testified that, in response, the man said, "Don't listen to her," as if it were no big deal. Cortes described what he saw and heard as not an assault but an argument, and testified that when they returned to Gonzalez's apartment, they did not call the police. On cross examination, Cortes stated that he did not believe anything happened based on what he observed.

The relative weights of these testimonies notwithstanding, we acknowledge that there is sufficient evidence to support the State's case against Appellant. *But see **Wells***, 611 S.W.3d at 410 (question we must answer in reviewing constitutional error for harm is not whether jury verdict was supported by evidence, but rather, likelihood that constitutional error actually was contributing factor in jury's deliberations in arriving at that verdict). But as the State notes in its brief, the case essentially boiled down to whether the jury found Jones's testimony to be credible. That is, jurors who thought she was lying would have no reason to hold Appellant's pleas against him, and jurors who believed her would be unlikely to find it necessary to resort to the prejudice inherent in a comment on his right to a jury trial. Thus, the State urges that the precise error in this case was incapable of moving jurors from a state of nonpersuasion to a state of persuasion on any material issue in the case.

We might find the State's argument compelling were it not for the prosecuting attorney's immediate reference to Paragraph 6 of the court's charge on the heels of his improper argument and his insistence to the jury that it could consider, without caveat, Appellant's exercise of his right to a jury trial for the purpose of wasting the jury's time and general dishonesty.[6] Given the prosecutor's statement of authority to the jury for its use of Appellant's decision to exercise his right to a jury trial without reference to the limitations on such use required by law and as set forth in the charge, we cannot conclude beyond a reasonable doubt that the prosecutor's improper

---

[6] The State points out that the court's charge, among other instructions, instructs the jury to disregard statements of counsel made during the course of argument not supported by the evidence or not in harmony with the law as stated in the charge. While we agree that the jury is presumed to follow the trial court's instructions in its charge, we cannot conclude that this or other such boilerplate language serves to render constitutional error from improper prosecutorial argument harmless where the trial court has overruled Appellant's objection to such argument, particularly where the prosecuting attorney argued to the jury that the court's charge authorizes them to consider the improper argument. To conclude otherwise would lead to the absurd result of no such error's ever being harmful.

13

argument did not play some role in the jury's deliberations on the question of Appellant's guilt or innocence.

But even if we agreed with the State that the precise error in this case was incapable of moving jurors from a state of nonpersuasion to a state of persuasion on a material issue in the case, we still must consider the extent to which the improper argument may have influenced the jury's assessment of Appellant's sentence.[7] The State argues that there is no reason to be concerned that the jury arrived at its sentence for impermissible reasons. In support of its contention, the State first urges that "[b]ased on everything this Court already knows about Smith County juries, this case would have ended with a maximum sentence, no matter what." This court finds troubling the State's assessment of the citizenry of Smith County in its role as jurors. We decline to entertain such an assumption.

The State next points to a litany of evidence, which it claims supports the jury's assessment of the maximum sentence against Appellant. The evidence the State chronicles in its brief includes: (1) Appellant's commission of the charged offense against Jones, who is the mother of his child; (2) Appellant's commission of other violent offenses against Jones while she was pregnant with his child; (3) Appellant threatened to send people to "shoot her daddy's house up" if Jones turned him in; (4) Appellant had nine previous convictions, including misdemeanors, state jail felonies, and felonies; (5) Appellant committed numerous disciplinary violations while incarcerated, including multiple assaults against other inmates; (6) Appellant threatened to assault the attorney who first was appointed to represent him in this matter; and (7) Appellant was a documented member of the Five Deuce Hoover Crips criminal street gang.

Generally, apart from determining whether the State has proved an enhancement allegation, the factfinder's decision of what particular sentence to assess is a "normative, discretionary function" that does not depend on the resolution of specific facts. *See **Jordan v. State***, 256 S.W.3d 286, 291 (Tex. Crim. App. 2008). In essence, the assessment of punishment involves two types of deliberations when the State has alleged, and the defendant has entered a plea of not true to, a

---

[7] In our request for supplemental briefing, we asked the parties to brief whether we could consider Appellant's trial on punishment in our harm analysis of an error that occurred during the guilt-innocence phase of trial. Neither party cited a case directly on point, and we have found none. However, both parties included discussions of the punishment proceedings in their respective analyses, and based on more general statements regarding the scope of our review, we conclude that the punishment proceedings are germane to the issue at hand. *See **Vasquez v. State***, 484 S.W.3d 526, 532 532 (Tex. App.–Houston [1st Dist.] 2016, no pet.); *see also **Simpson v. State***, 227 S.W.3d 855, 858–59 (Tex. App.–Houston [14th Dist.] 2007, no pet.).

prior conviction used for enhancement purposes. *Id.* at 291–92. First, the factfinder engages in a deductive, discrete fact-finding process to determine whether the State has proved that the enhancement allegation is true. *Id.* at 292. And second, considering all of the evidence admitted during the guilt and punishment phases, the factfinder engages in a normative process that is uninhibited by any required, specific fact determination to decide what particular punishment to assess within the range prescribed by law. *Id.*

Here, the State argues that so much evidence was offered to support the maximum sentence that there is no way that the prosecutor's improper argument could have factored into the jury's assessment of that sentence. Such an argument could be persuasive on the question of a defendant's guilt or innocence. But just as we cannot evaluate the sufficiency of the evidence underlying the jury's normative function in its assessment of punishment, we similarly cannot conclude here, beyond a reasonable doubt, that the prosecuting attorney's improper argument was not a factor considered by the jury in exercising this function to assess the maximum sentence against Appellant.

## Summation

In conducting our analysis, we considered the entirety of the record in light of the aforementioned factors. In so doing, we noted that the improper prosecutorial argument at issue was the culmination of a well-cultivated theme beginning in voir dire regarding Appellant's exercise of his right to a jury trial. The prosecutor's improper argument expressed to the jury that Appellant's exercise of this right was done for the purpose of wasting the jury's time for dishonesty's sake. This suggestion struck at another important theme, on which both parties relied—that each party was appreciative of the jurors' time and willingness to serve. We cannot conclude beyond a reasonable doubt that the prosecutor's improper argument did not contribute to the jury's verdict or sentence, particularly in light of (1) the prosecutor's statement to the jury that the court's charge on guilt-innocence authorized it to consider the same or (2) the jury's exercise of the nature of its normative function in assessing punishment. Therefore, beginning with the presumption that the constitutional error in this case requires reversal and reiterating that the burden of proof rests upon the State, we hold that Appellant suffered harm as a result of the

15

prosecutor's improper jury argument.  *See **Haggard***, 612 S.W.3d at 328; ***Morris***, 554 S.W.3d at 124; ***Vasquez***, 484 S.W.3d at 532.  Appellant's first issue is sustained.[8]

## DISPOSITION

Having sustained Appellant's first issue, we *reverse* the trial court's judgment and *remand* the cause for a new trial.

**BRIAN HOYLE**
Justice

Opinion delivered January 31, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

---

[8] Because we have sustained Appellant's first issue, we do not consider his second issue regarding the trial court's overruling his objection to the admission of two exhibits.  *See* TEX. R. APP. P. 47.1.



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JANUARY 31, 2023**

**NO. 12-21-00226-CR**

**MARCUS LAMONT ALLEN,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 241st District Court
of Smith County, Texas (Tr.Ct.No. 241-1932-20)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, because it is the opinion of this Court that there was error in judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this Court that the judgment be **reversed** and the cause **remanded** to the trial court **for a new trial** in accordance with the opinion of this Court; and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*